UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DALLAS WELLS,

                Plaintiff,              COMPLAINT

      -against-              Case No.  1:24-cv-00260-GTS-DJS

SARATOGA HOSPITAL, HUDSON VALLEY
COMMUNITY COLLEGE, JULIE ERNST, and
ERICA COLE

                Defendants.

---

Plaintiff, Dallas Wells, by and through his attorneys, Finn Law Offices, asserts the following as his Complaint.

## BACKGROUND

1. At all times relevant to this action, Plaintiff was and is a resident of the County of Saratoga, State of New York.  Plaintiff is a male.

2. Upon information and belief, at all times relevant to this action, Defendant Saratoga Hospital was and is a domestic Not for Profit Corporation with its principal place of business and headquarters located at 211 Church Street, Saratoga Springs, NY 12866.

3. Upon information and belief, at all times relevant to this action, Defendant Hudson Valley Community College was and is a domestic public community college located in Troy, New York and is part of the State University of New York (SUNY).

4. Defendant HVCC is a governmental entity and "state actor" subject to 42 U.S.C. 1983.

5. As relevant to this Complaint, defendant Saratoga Hospital and defendant HVCC collaborated on a joint Imaging program at Saratoga Hospital.

6. It is therefore alleged that defendant Saratoga Hospital is a joint actor and subject to 42 U.S.C. 1983 to the same extent as HVCC.

7. Upon information and belief at all times relevant to this Complaint defendant Julie Ernst was and is a female individual who resides in Saratoga County, State of New York.

8. Defendant Ernst was, upon information and belief, at all times relevant to this Complaint, the Imaging Department Supervisor at Saratoga Hospital.

9. Upon information and belief at all times relevant to this Complaint defendant Erica Cole was and is a female individual who resides in the State of New York.

10. Defendant Cole was, upon information and belief, at all times relevant to this Complaint, employed by HVCC as a supervisor and with oversight of the Imaging department.

11. Jurisdiction of the Court is invoked under 28 U.S.C. §§1331 and 1343.

12. This Court has supplemental jurisdiction over any and all New York State based claims pursuant to 28 U.S.C. 1367.

13. Pursuant to 28 U.S.C. §1391, venue properly lies in the United States District Court for the Northern District of New York, as this is the district where the parties reside and where the events complained of occurred.

## FACTUAL ALLEGATIONS

14. Dallas Wells was enrolled in the Imaging program at Saratoga Hospital (a program offered with and through HVCC) in August of 2022.

15. Plaintiff attended clinic twice a week and was supervised by HVCC faculty on a weekly basis.

16. Plaintiff worked as a radiology x-ray technician.

17. Plaintiff was well liked by staff and colleagues.

18. Plaintiff was voted class president and maintained an approximate B+ Grade point average.

19. At the end of the Spring semester (May 2023) plaintiff was abruptly dismissed from the program.

20. Defendants waited until after plaintiff had completed the semester, obtaining every last benefit they could from his quality care and performance.

21. Plaintiff had received no warning or notice that his placement or position in the program was in jeopardy.

22. Plaintiff had never been reprimanded or written up.

23. Plaintiff did not receive any opportunity to be heard before the decision was communicated to him.

24. The only real "disagreement" that plaintiff had with defendant Ernst and Cole was that he spent too long with patients.

25. Plaintiff cared about his patients and felt obligated to answer their questions, especially as it related to the procedures he was performing. He was told repeatedly: "get them in, get them out."

26. Plaintiff made a complaint concerning the manner in which he was supervised as he felt patient care should be a priority not just getting patients in and out. The first such complaint was in the fall of 2022, but, he made similar complaints throughout the spring of 2023 as he was informed approximately 25 times that he just needed to get them in and out.

27. After the decision to remove him from the program was made, defendants concocted a narrative that plaintiff was lazy, that he was continually counseled for insubordination, and, that he refused to follow orders. Each allegation is untrue.

28. In addition plaintiff was stated to be intimidating, which is also false.

29. In addition, plaintiff was given grades that were not accurate based upon alleged (but false) incompleteness.

30. To establish personal liability against a government official or state actor for a constitutional violation, a plaintiff must show that the individual, acting under color of state law, caused the deprivation of a federal right.

31. As set forth above, defendants Ernst and Cole fabricated reasons for dismissing plaintiff from the program because they were upset that he raised concerns about the manner in which patient care was handled at the Hospital. In addition, both Ernst and Cole took these actions without giving plaintiff any opportunity to be heard: a direct violation of his due process rights. Therefore both individuals are liable for their personal involvement in the constitutional violations.

## FIRST CAUSE OF ACTION

(Labor Law Section 740 and 741 against Hospital and College)

32. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

33. As relevant here, New York State Labor Law Section 740 prohibits an employer from taking retaliatory action against an employee who discloses to a supervisor an activity, policy, or practice of the employer that:

    (i)     The employee reasonably believes is in violation of any law, rule, or regulation; or

    (ii)    The employee reasonably believes poses a substantial and specific danger to the public health or safety.

34. At all relevant times, Plaintiff was an employee of the Defendants as defined under Labor Law Section 740.

35. At all relevant times the Defendants, Saratoga Hospital and HVCC, were employers as defined under New York Labor Law Section 740.

36. Labor Law Section 741 is closely related and parallels the provisions of §740, except it also applies to "improper quality of patient care."

37. As set forth above, plaintiff and his Employers had multiple disagreements about how much time plaintiff should dedicate to patients, including how much time he should give to answering questions about their care.

38. According to the New York State Hospital Patients' Bill of Rights, patients shall (as relevant here)

    3.      Receive considerate and respectful care

    8.      Receive complete information about your diagnosis, treatment and prognosis.

> 9. Receive all the information that you need to give informed consent for any proposed procedure or treatment. This information shall include the possible risks and benefits of the procedure or treatment.

39. As set forth, above, plaintiff was repeatedly directed not to answer questions or spend time with patients.

40. Plaintiff repeatedly complained that the policy and protocol at Saratoga Hospital was not consistent with patient rights or proper medical care.

41. Plaintiff had a good-faith belief that the policy and practices he was being asked to follow were in violation of law.

42. Plaintiff had a good-faith belief that the Hospital was not providing proper quality of patient care and that such violations would be adverse to patient safety.

43. As set forth above, plaintiff dutifully performed and excelled in his position.

44. Nonetheless he was dismissed from the program without warning or reason.

45. At all times material hereto, defendant's actions were willful, wanton, malicious, reckless, and outrageous in their disregard for the rights and safety of the plaintiff.

46. As a direct and/or indirect result of said conduct, the Plaintiff has suffered the injuries and damages described herein, has lost wages an opportunity to get promoted, and has suffered emotional distress in an amount exceeding the value of claims of all lower courts.

47. By reason of the foregoing, defendants are liable to the plaintiff for compensatory damages and for punitive damages, together with interest and costs of this action.

**SECOND CAUSE OF ACTION**

(First Amendment Retaliation against all defendants)

48. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

49. Plaintiff held the unique position of serving the community while also being subject to the regulations and oversight of a public employer. This dual role meant that he had a responsibility to both his employer and to the public he served.

50. While working in the Imaging Department at Saratoga Hospital, plaintiff was not just an employee, but also a representative of the government, tasked with the duty of providing essential services to members of the public.

51. Plaintiff's actions were driven by his belief in the importance of providing patients with the care they are entitled to under the law. In doing so, he exercised his First Amendment rights, using his voice to speak on matters of public concern.

52. However, this right to speak out is not absolute for public employees and must be balanced against the government's interest in running efficient public services. In plaintiff's case, his speech led to alleged retaliation, including dismissal from the program without warning or just cause. This raises important questions about potential First Amendment violations and the rights of public employees to speak out on matters of public concern.

53. When plaintiff spoke out on matters involving proper patient care, he was engaging in speech on matters of public concern. These are issues related to health, safety, and the community welfare, which are matters of political, social, or other concern to the community.

54. If a jury finds that his speech was a substantial or motivating factor in his termination, then it could be considered a First Amendment violation, provided

that the defendants (including the individual defendants) cannot demonstrate that they would have taken the same action even in the absence of the protected conduct.

55. Moreover, if the defendants cannot prove that the plaintiff's speech caused significant disruption to the workplace or interfered with his ability to perform his job, then it would be likely that the plaintiff's right to freedom of speech under the First Amendment was violated.

56. Plaintiff alleges violation of his First amendment rights and seeks damages. As a direct result of each Defendants breach of duty, the Plaintiff suffered significant damages, both physical and emotional.

57. The damages suffered by the Plaintiff due to these actions surpass the monetary limit that could be awarded by any lower court.

## THIRD CAUSE OF ACTION

(Due Process Violation against all defendants)

58. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

59. The Fourteenth Amendment of the U.S Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

60. Plaintiff asserts that Defendants Ernst and Cole, acting under color of state law, have violated his due process rights.

61. Defendants Ernst and Cole fabricated reasons for dismissing Plaintiff from his program, effectively ending his career, because he raised concerns about the manner in which patient care was handled at the Hospital.

62. Defendants Ernst and Cole deprived Plaintiff of his property interest in his employment without due process of law by taking these actions without giving Plaintiff any opportunity to be heard: a direct violation of his due process rights.

63. Plaintiff did not receive any opportunity to be heard before the decision was communicated to him. His position was terminated without warning, notice, or a hearing of any kind, thereby denying him his right to clear his name.

64. As a direct result of Defendants' breach of duty, Plaintiff Wells suffered significant damages, both physical and emotional.

## FOURTH CAUSE OF ACTION

(Breach of Contract)

65. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

66. Prior to his dismissal, Plaintiff had entered into an agreement with Defendants, which constituted a binding contract. The terms of this agreement included, but were not limited to, specific procedures that must be followed prior to the removal of an individual from the program.

67. Plaintiff performed all obligations under the contract, including but not limited to, fulfilling all academic and professional requirements, and timely payment of all tuition and fees associated with the program.

68. Despite Plaintiff's full compliance with the terms of the agreement, Defendants failed to adhere to the contractual procedures set forth for the removal of an individual from the program.

69. Defendants' failure to adhere to the specified procedures directly resulted in the wrongful termination of Plaintiff from the program, thereby breaching the agreement.

70. As a direct result of Defendants' breach of contract, Plaintiff has suffered significant damages, including loss of professional opportunity, financial loss, and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, economic loss, loss of professional opportunity, attorney's fees, costs, disbursements, and such other and further relief as this Court deems just and proper.

Plaintiff demands a trial by jury on all claims.

Dated: March 14, 2024

FINN LAW OFFICES
Attorneys for Plaintiff

By:_____
    Ryan M. Finn, Esq.
P.O. Box 966
Albany, NY 12201
Ph: 518.928.1152
Fax: 518.677.1155
Ryan@LawFinn.com
[conomic loss.](#)

- Physical Address:     12 Sheridan Avenue
  Albany, NY 12207