UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DALLAS WELLS,

                          Plaintiff,

v.                                                  1:24-CV-0260
                                                  (GTS/DJS)
SARATOGA HOSPITAL; HUDSON VALLEY
COMMUNITY COLLEGE; JULIE ERNST; and
ERICA COLE,

                          Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

FINN LAW OFFICES                          RYAN M. FINN, ESQ.
  Counsel for Plaintiff
P.O. Box 966
Albany, NY 12201

BOND, SCHOENECK & KING PLLC         PAUL BUEHLER, ESQ.
  Counsel for Defendants Saratoga Hospital    REBECCA JADE LAPOINT, ESQ.
  and Julie Ernst
22 Corporate Woods Boulevard, Suite 501
Albany, NY 12211

HODGSON RUSS LLP                     GLEN P. DOHERTY, ESQ.
  Counsel for Defendants HVCC and Erica Cole
677 Broadway, Suite 401
Albany, NY 12207

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this civil rights action filed by Dallas Wells ("Plaintiff") against Saratoga Hospital and Julie Ernst (together, the "Saratoga Defendants"), and Hudson Valley Community College ("HVCC") and Erica Cole (together, the "HVCC Defendants"), is the Saratoga Defendants' motion to dismiss Plaintiff's claims against them for failure to state a

claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 14.) For the reasons set forth below, the Saratoga Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, in his Complaint, Plaintiff asserts four claims: (1) a claim for a violation of N.Y. Lab. L. §§ 740 and 741 against Defendants Saratoga Hospital and HVCC based on those Defendants' alleged retaliation in dismissing him from the Imaging Program for reporting policies or practices that present a danger to patients and violate the New York State Hospital Patients' Bill of Rights ("First Claim"); (2) a claim for retaliation in violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983 against all Defendants based on the same dismissal and alleged speech ("Second Claim"); (3) a claim for violation of his due process rights pursuant to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 against all Defendants based on their actions in dismissing him from the program without affording him notice or an opportunity to be heard ("Third Claim"); and (4) a claim for breach of contract[1] based on his dismissal from the program without affording him the procedures specified by the agreement ("Fourth Claim"). (Dkt. No. 5.)

### B. Parties' Briefing on the Saratoga Defendants' Motion to Dismiss

#### 1. Saratoga Defendants' Memorandum of Law

Generally, in their motion to dismiss, the Saratoga Defendants make four arguments. (Dkt. No. 14.) First, the Saratoga Defendants argue that Plaintiff cannot state claims under N.Y. Lab. L. §§ 740 and 741 because (a) he has not plausibly alleged that he is an employee of

---

[1] Plaintiff does not specify against which Defendants this claim is asserted.

2

Defendant Saratoga Hospital under the meaning of those statutes, and (b) even if he has alleged such employment, he has not plausibly alleged all the necessary elements of those claims given that he has failed to allege that any conduct by Defendant Saratoga Hospital created a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient. (*Id.* at 9-13.)

Second, the Saratoga Defendants argue that Plaintiff's constitutional claims are fatally flawed for several reasons. (*Id.* at 13-20.) More specifically, as an initial matter, the Saratoga Defendants argue that they are not state actors because the fact that they are funded or licensed by the state and that they operated the Imaging Program with Defendant HVCC is insufficient to create the relevant nexus, and neither Defendant Saratoga Hospital nor Defendant Ernst had anything to do with Plaintiff's dismissal from the program. (*Id.* at 13-16.) Furthermore, as to Plaintiff's First Amendment claim, the Saratoga Defendants argue that the alleged protected speech was related to personal employment matters between Plaintiff and Defendant Ernst rather than matters of public concern. (*Id.* at 16-18.) Finally, as to Plaintiff's due process claim, the Saratoga Defendants argue that, even if Plaintiff is entitled to due process, he could have pursued an Article 78 proceeding and thus had an adequate post-deprivation remedy that bars his claim. (*Id.* at 18-20.)

Third, the Saratoga Defendants argue that Plaintiff cannot state a breach-of-contract claim because (a) the proper avenue for such a claim is an Article 78 proceeding, (b) he has not commenced a timely Article 78 proceeding, and (c) even if allowed to proceed, Plaintiff's claim lacks merit because he has not alleged that any contract exists between him and either Defendant Saratoga Hospital or Defendant Ernst. (*Id.* at 20-24.)

3

Fourth, the Saratoga Defendants argue that the Complaint should be dismissed against them with prejudice and without leave to amend because the defects in the Complaint cannot be remedied by any amendment. (*Id.* at 24.)

### 2.   Plaintiff's Opposition Memorandum of Law

Generally, in response to the Saratoga Defendants' motion, Plaintiff makes two arguments. (Dkt. No. 20.) First, Plaintiff states that he withdraws his First and Fourth Claims (for violations of N.Y. Lab. L. §§ 740 and 741 and breach of contract, respectively) against Defendants Saratoga Hospital and Ernst. (*Id.* at 1.)

Second, Plaintiff argues that the Saratoga Defendants qualify as state actors because they acted in conjunction with Defendant HVCC to deprive Plaintiff of his rights, and the Program Policy Handbook shows that the Saratoga Defendants were decision-makers regarding Plaintiff's presence in the program. (*Id.* at 3-6.) He further argues that the Saratoga Defendants were personally involved in the alleged violations because Defendant Ernst "made the decision to dismiss plaintiff from the program." (*Id.* at 6.)

### 3.   Saratoga Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's response, the Saratoga Defendants make four arguments. (Dkt. No. 21.) First, the Saratoga Defendants acknowledge that Plaintiff has withdrawn his First and Fourth Claims, and asserts they are therefore entitled to the requested dismissal of those claims. (*Id.* at 6.)

Second, the Saratoga Defendants argue that Plaintiff has improperly produced additional allegations and exhibits that were not included in the Complaint (or incorporated into it by

4

reference) and that should not be considered when deciding the merits of the current motion. (*Id.* at 6-7.)

Third, the Saratoga Defendants argue that, in any event (even considering Plaintiff's new allegations), Plaintiff's constitutional claims cannot succeed because (a) the Saratoga Defendants are not state actors and Plaintiff has offered nothing but conclusory allegations to say that they are, (b) his alleged statements did not pertain to matters of public concern related to his First Amendment claim, and (c) he was afforded sufficient post-deprivation process in the form of the ability to file an Article 78 petition related to his Fourteenth Amendment claim. (*Id.* at 7-13.)

Fourth, the Saratoga Defendants argue that the Complaint should be dismissed without leave to amend because amendment would be futile, a conclusion which is emphasized by the new allegations Plaintiff inappropriately attempts to assert in his response. (*Id.* at 13-14.)

## II.   GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between

5

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15

6

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not

### III. ANALYSIS

#### A. Whether Plaintiff Has Plausibly Alleged that the Saratoga Defendants Are State Actors

After careful consideration, the Court answers the above question in the negative as to Defendant Saratoga Hospital, but in the affirmative as to Defendant Ernst for the following reasons.[3]

As an initial matter, the Court agrees with the Saratoga Defendants that Plaintiff has made a number of assertions within his response memorandum of law that appear to rely on

---

incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[3]    The Court assumes for the purposes of this motion only that Defendant HVCC and Defendant Cole are state actors. *See Rene v. Mustafa*, 16-CV-4072, 2024 WL 1332556, at *13 (E.D.N.Y. Mar. 28, 2024) ("To begin, there is no dispute Mustafa, who is a doctor-employee of Stony Brook, which, as part of the SUNY system is a public institution and, therefore, a state actor, is also deemed a state actor.") (citing *NCAA v. Tarkanian*, 488 U.S. 179, 183, 192 [1988] ["A state university is without question a state actor" and its executives "unquestionably act under the color of state law" when "performing their official functions."]). Plaintiff alleges that Defendant HVCC is a public community college that is part of the State University of New York ("SUNY") system, and that Defendant Cole is its employee. (Dkt. No. 5, at ¶¶ 3, 10.)

9

allegations that were not pled in the Complaint. (*Compare* Dkt. No. 20 *with* Dkt. No. 5.)[4] He has also appended to that response a copy of the HVCC Radiologic Technology Program Policy Handbook ("Program Handbook"). This Program Handbook is not attached to the Complaint, and the only claim that appears to reference it (and/or to which it is arguably integral) is Plaintiff's breach-of-contract claim, which asserts allegations regarding an "agreement." (Dkt. No. 5, at ¶¶ 66, 68, 69.) However, because consideration of the Program Handbook would not materially affect the Court's decision on the Saratoga Defendants' motion, the Court need not decide whether it may be properly considered here.

"For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Sybalski v. Independent Gr. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 [2001]). "'The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the [state actors],'" and "'mere cooperation with state official . . . is insufficient to establish state action.'" *Gibson v. Mt. Vernon Montefiore Hosp.*

---

[4] Of course, because Plaintiff is represented by counsel, he may not benefit from the special solicitude afforded to pro se litigants, which enables them to constructively amend the allegations of their complaint through allegations in their response to a motion to dismiss (to the extent that the latter allegations are consistent with the former allegations).

*Executive Director*, 22-CV-4213, 2024 WL 1217528, at *9 (S.D.N.Y. Mar. 19, 2024) (citations omitted). "A private actor can only be 'a willful participant in joint activity with the State or its agents' if the two share some common goal to violate the plaintiff's rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014). "The 'fundamental question' for each test is whether the private party's conduct is 'fairly attributable' to the state such that it bears responsibility." *A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 284 (N.D.N.Y. 2022) (Sannes, J.) (quoting *Fabrikant v. French*, 691 F.3d 193, 207 [2d Cir. 2012]).

Plaintiff argues that, because Defendant Saratoga Hospital had a "joint venture" with Defendant HVCC related to the Imaging Program and because the Program Policy Handbook indicates that the Clinical Supervisor (who, in the case of Plaintiff's placement, was Defendant Ernst) is the "decision maker[] when it came to the fate of plaintiff," the Saratoga Defendants should be deemed to have acted under the color of state law. (Dkt. No. 20, at 5-6.) However, the fact that the Saratoga Defendants and the HVCC Defendants had an agreement to work together to facilitate the Imaging Program does not, without more, indicate joint action with regard to the alleged violation of Plaintiff's constitutional rights.

As to Defendant Saratoga Hospital, Plaintiff notably has not alleged (in his otherwise detailed 10-page Complaint) that it was involved in any way in the decision to terminate Plaintiff from the Imaging Program. Specifically, Plaintiff alleges that Defendant Ernst and Defendant Cole "fabricated reasons for dismissing plaintiff from the program because they were upset that he raised concerns about the manner in which patient care was handled at the Hospital," and that those two individuals "took these actions without giving plaintiff any opportunity to be heard." (Dkt. No. 5, at ¶ 31.) However, Plaintiff never alleges how Defendant Saratoga Hospital was

11

involved in this conduct by Defendant Ernst and Defendant Cole. (*See generally* Dkt. No. 5.) The fact that Defendant Ernst is employed by Defendant Saratoga Hospital does not by itself justify holding Defendant Saratoga Hospital responsible for actions taken by Defendant Ernst. *See Bell v. Saunders*, 20-CV-0256, 2024 WL 5078136, at *5 (N.D.N.Y. Dec. 11, 2024) (Sannes, C.J.) ("[P]ersonal involvement is an essential element of any claim brought under § 1983.") (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 [2d Cir. 2013]). Because Plaintiff does not allege that Defendant Saratoga Hospital itself took any action that can be construed as participation with either of the HVCC Defendants related to Plaintiff's termination, Plaintiff has not plausibly alleged that Defendant Saratoga Hospital acted under the color of state law under the circumstances.

However, as to Defendant Ernst, drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff does appear to allege that Defendant Ernst worked in concert with Defendant Cole regarding Plaintiff's termination, as highlighted in the previous paragraph. (Dkt. No. 5, at ¶ 31.) Although Plaintiff's allegations do not indicate that Defendant Cole, as the state actor, initiated the alleged acts against Plaintiff, he does allege that Defendants Ernst and Cole both "concocted a narrative" together to justify removing him from the program. (Dkt. No. 5, at ¶ 27.) Although the allegations certainly do not provide a clear picture of the relationship and agreement between Defendant Ernst and Defendant Cole, the Complaint does allege (albeit barely) facts to plausibly suggest that Defendant Ernst did more than merely cooperate with Defendant Cole. As a result, the Court finds that Plaintiff has plausibly alleged that Defendant Ernst is a state actor through joint action for the purposes of this motion.

      **B.**      **Whether Plaintiff Has Alleged Facts Plausibly Stating His Constitutional Claims Against Defendant Ernst**

12

After careful consideration, the Court answers the above question in the negative for the reasons stated in the Saratoga Defendants' memorandum of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, the Court acknowledges that, despite the fact that the Saratoga Defendants made numerous arguments in support of its motion to dismiss Plaintiff's constitutional claims on the merits, Plaintiff failed to address any of those arguments in his response memorandum of law. (Dkt. No. 20.) As the Saratoga Defendants argue, failure to respond to the arguments raised means that the Saratoga Defendants' burden is lightened "such that, in order to succeed with regard to that argument, [Defendants] need show only that the argument possesses facial merit." *Hogan v. Lewis Cnty.*, 16-CV-1325, 2018 WL 4689094, at *21 (N.D.N.Y. Sept. 28, 2018) (Kahn, J.) (citing *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 & n.1 [N.D.N.Y. Oct. 30, 2009] [Suddaby, J.] [finding that the defendant's burden on its motion to dismiss was lightened due to the plaintiff's failure to address the defendant's request to dismiss a cause of action based on the expiration of the applicable statute of limitations, and collecting cases in which failure to respond to an argument resulted in a "modest" burden for the threshold party]). The Saratoga Defendants' arguments in this case meet that standard.

### 1. First Amendment Retaliation Claim

As to Plaintiff's First Amendment retaliation claim, "a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Odermatt v. New York City Dep't of Edu.*, 694 F. App'x 842, 845 (2d Cir. 2017)

13

(quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 106-07 [2d Cir. 2001]). "However, when the speaker is a public employee, she must also allege that her speech was 'on matters of public interest,' . . . and made as [a] member of the public, rather than as an employee." *Odermatt*, 694 F. Appx. at 845 (quoting *Lynch v. Ackley*, 811 F.3d 569, 576-78 [2d Cir. 2001]).

The first pertinent question here is whether Plaintiff qualifies as a "public employee." Plaintiff's own allegations appear to suggest that he believes he does. (Dkt. No. 5, at ¶¶ 49-53 [alleging variously that he was "subject to the regulations and oversight of a public employer," that while at Saratoga Hospital he was "not just an employee, but also a representative of the government," and alleging that his statements were a matter of public concern].) Defendants appear to concede this point. (Dkt. No. 14, Attach. 1, at 16-18; Dkt. No. 23, at 9-12.) The Court therefore will consider Plaintiff's claim under the standard applicable to public employees.[5]

Whether speech is on a matter of public concern is "a question of law to be determined based on 'the content, form, and context of a given statement, as revealed by the whole record . .

---

[5] According to the Complaint, Plaintiff worked as a radiology x-ray technician through his enrollment in the Imaging Program at Defendant Saratoga Hospital, in which he attended clinic at Saratoga Hospital twice a week and was supervised by faculty from Defendant HVCC. (Dkt. No. 5, at ¶¶ 14-16.) The Complaint therefore appears to allege that Plaintiff was a student at Defendant HVCC, but worked at Defendant Saratoga Hospital through a program offered jointly through Defendant Saratoga Hospital and Defendant HVCC, where he was supervised by faculty from Defendant HVCC and Defendant Ernst as the Imaging Department Supervisor. (*See generally,* Dkt. No. 5.) The alleged facts, while not clearly establishing Plaintiff as an employee of Defendant HVCC, do plausibly suggest that he was. *See Odermatt*, 694 F. App'x at 844-46 (finding student was a public employee where she was a student in a state teaching fellows program, and was placed to work at a non-state actor school, because although the plaintiff "was not technically an employee of [the Department of Education] during her pre-service training, their "relationship with [her] was focused on their ability to recruit and train employees 'for the efficient provision of public services'").

14

., looking to, among other things, 'whether the speech . . . had a broader public purpose,' . . . and whether the speech can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Heim v. Daniel*, 81 F.4th 212, 228 (2d Cir. 2023) (internal citations omitted). "With regards to the first element, the speech 'must have been made as a citizen on matters of public concern rather than as an employee on matters of personal interest'–meaning that a plaintiff's statements cannot have been 'uttered for any other reason than to protect [a plaintiff's] own rights or to air his personal grievances.'" *Gandhi v. New York State Unified Court System*, 20-CV-0120, 2024 WL 365119, at *5 (N.D.N.Y. Jan. 31, 2024) (Kahn, J.) (quoting *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 235-36 [2d Cir. 2002]); *see also Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (noting that, when assessing whether speech was a matter of public concern, courts consider "whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose").

      Here, Plaintiff does allege that his "actions were driven by his belief in the importance of providing patients with the care they are entitled to under the law," and that he expressed his disagreement about instructions to spend less time with patients because he "cared about his patients and felt obligated to answer their questions, especially as it related to the procedures he was performing." (Dkt. No. 5, at ¶¶ 24-26, 51.) However, the fact that Plaintiff felt that he needed to answer questions to provide effective care, or that effective patient healthcare might generally be something that is in the public interest, does not by itself plausibly suggest that Plaintiff's speech was a matter of public concern for the purposes of a First Amendment claim.

      The most favorable construction of Plaintiff's alleged speech is not just a general concern for patient welfare, or any specific concerns that the inability to spend more time with patients

had actually been detrimental to their care, but rather that his supervisors were preventing him from performing his work the way he wanted to perform it: simply stated, he disagreed with Defendants about how long he should spend with patients to do his job. However, Plaintiff does not allege facts plausibly suggesting that he was being instructed to perform the actual act of imaging quickly in a manner that would compromise the results or lead to poor patient outcomes. Rather, he alleges he spent additional time with patients because he was answering their questions, not because he was performing the actual procedures.

Given that Plaintiff was a radiology x-ray technician rather than a nurse, physician, or other medical professional who is responsible for diagnosis and treatment of medical issues, it is not clear how his merely being told to not spend additional time with patients would constitute a risk of providing inadequate care as required under the law; based on the factual allegations provided, it is clear that Plaintiff was not the only health care provider a patient would see and talk with during the course of treatment. Simply stated, the fact that Plaintiff thought it was better practice for him to spend more time with patients does not plausibly suggest that he spoke on a matter of public concern as opposed to on a personal grievance.

In any event, Plaintiff's own factual allegations plausibly suggest that his speech was in response to criticism made regarding his job performance. *See Rafiy v. Nassau Cnty. Med. Ctr.*, 218 F. Supp. 2d 295, 306-07 (E.D.N.Y. 2002) ("In other words, where the speech uttered by the employee relates simply to a disagreement or a criticism of the employer as a boss, it is unlikely that such speech will be protected."). Specifically, Plaintiff acknowledges that his alleged speech was in response to repeated instructions by Defendants Ernst and Cole that he was spending too much time with patients. (Dkt. No. 5, at ¶¶ 24-26 [alleging that he made multiple

complaints about his concerns during fall of 2022 and spring of 2023, because "he was informed approximately 25 times that he just needed to get them in and out"].)

For each of these two alternative reasons, the Court finds that, because Plaintiff has not alleged facts to plausibly suggest that his speech was on a matter of public interest, his First Amendment retaliation claim must be denied.

### 2. Fourteenth Amendment Due Process Claim

As to Plaintiff Fourteenth Amendment due process claim, Plaintiff alleges that Defendants violated his rights by terminating him from the Imaging Program (in which he had a property interest) without providing him with any opportunity to be heard. (Dkt. No. 5, at ¶¶ 58-64.) The Saratoga Defendants argue that, regardless of whether Plaintiff had any property interest or was entitled to process, his due process claim must fail because he could have challenged the alleged adverse action through a New York Article 78 proceeding. (Dkt. No. 14, Attach. 1, at 18-20.)

"When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006); *see also Pollok v. Chen*, 806 F. App'x 40, 44-45 (2d Cir. 2020) ("A procedural due process claim may be defeated if there is a meaningful post-deprivation state-law remedy when the claim is 'based on random, unauthorized acts by state employees.'") (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 [2d Cir. 1996]). Here, the alleged termination of Plaintiff's place in the Imaging Program was not pursuant to an established state procedure, but

17

rather a random act. As a result, the existence of a meaningful post-deprivation remedy would be fatal to his due process claim.

New York's Article 78 procedures have been overwhelmingly found to constitute an adequate post-deprivation remedy. *See e.g.*, *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881 ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy."). That Plaintiff seemingly did not take advantage of his ability to pursue an Article 78 proceeding does not change the fact that it was available. *See Paulk v. Kearns*, 596 F. Supp. 3d 491, 501 (W.D.N.Y. 2022) (finding that the plaintiff's failure to bring an Article 78 proceeding did not merit letting a due process claim proceed because "he may not 'reject the opportunity to meaningful due process review and then come to this court seeking [relief] for what [he] asserts is a due process violation'") (quoting *Aron v. Becker*, 48 F. Supp. 3d 374, 374-75 [N.D.N.Y. 2014] [McAvoy, J.]).

Because Plaintiff had access to a meaningful post-deprivation remedy in the form of an Article 78 proceeding, his procedural due process claim must be dismissed as a matter of law.

**ACCORDINGLY**, it is

**ORDERED** that the Saratoga Defendants' motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that all Plaintiff's claims against the Saratoga Defendants in Plaintiff's Complaint (Dkt. No. 5) are **DISMISSED**.[6]

---

[6] The Court declines to address the Saratoga Defendants' arguments related to whether Plaintiff should be permitted to amend his Complaint because Plaintiff has not made any request to amend his Complaint in his response memorandum of law. (*See generally,* Dkt. No. 16.) Notably, although the claims against the Saratoga Defendants have been dismissed, claims remain pending against the HVCC Defendants. Should Plaintiff wish to amend his Complaint,

Dated: February 4, 2025
      Syracuse, New York

_____
Glenn T. Suddaby
U.S. District Judge

---

he must request leave to do so pursuant to the procedures in Fed. R. Civ. P. 15 and N.D.N.Y. Local Rule 15.1(a).